OPINION
{¶ 1} This appeal stems from the grant of a petition for a civil stalking protection order (hereinafter "CSPO") filed by Angelia Podeweltz against appellant, Joseph Rieger and the dismissal of Rieger's petition for a CSPO which he sought to have issued against Podeweltz. Rieger raises fifteen assignments of error in support of his claim that the trial *Page 2 
court erred in issuing the CSPO against him and by dismissing his petition for a CSPO. We have condensed these arguments into three assignments of error: that the decision is not supported by the evidence; that the magistrate abused his discretion with regard to evidentiary issues; and that the magistrate and trial court committed procedural errors.
 {¶ 2} We conclude that there is evidence in this record upon which a reasonable person could conclude that Rieger had committed the offense of menacing by stalking and that a CSPO was thus warranted. We further find no error with regard to any claimed evidentiary or procedural matters. Therefore, the judgment of the trial court is Affirmed. I {¶ 3} Joseph Rieger and Angelia Podeweltz were romantically involved with each other for approximately one year until Rieger terminated the relationship. Rieger subsequently attempted to reconcile with Podeweltz, however Podeweltz rejected his advances. {¶ 4} On May 6, 2005, Podeweltz filed a petition for a CSPO in which she alleged that Rieger followed her to a local fast food restaurant on a daily basis. She also alleged that Rieger telephoned her on a daily basis beginning as early as 5:30 a.m. and that there was one occasion when he placed fifty calls to her cellular telephone. The trial court issued a temporary ex parte CSPO restraining Rieger from having contact with Podeweltz, and the matter was set for hearing.
 {¶ 5} On July 11, 2005, Rieger filed a petition for a CSPO in which he set forth the following as his basis for seeking a protective order:
 {¶ 6} "On 6-11-05 App. 8:30 p.m. Angelia Podeweltz approached me at the Saint *Page 3 
Helen's Festival Beer Both [sic] and threw my beer on me.
 {¶ 7} "While at Angelia's House — Angelia kicked me from behind in the leg. (App. March 05).
 {¶ 8} "I have had numerous hang-up phone calls (App. April 05-Present).
 {¶ 9} "While stopping at McDonald's on my way home from my sister's Angelia pulled in and drove up to me and left the scene immediately (May 05)."
 {¶ 10} Rieger's request for ex parte relief was denied. Thereafter, Rieger, who was represented by counsel, withdrew his petition.
 {¶ 11} On September 1, 2005, the parties signed a consent agreement providing that Rieger would have no contact with Podeweltz and that he would, at all times, maintain a distance of five hundred feet from Podeweltz. However, on September 15, Rieger filed a motion to vacate the consent agreement on the grounds that he "was not properly informed of all the potential ramifications of signing the consent agreement." He also filed a second petition for a CSPO against Podeweltz. This petition set forth the same allegations as the previous petition. The trial court consolidated all of the petition actions and entered an order vacating the consent agreement.
 {¶ 12} A hearing was held on the petitions on October 31, 2005. At this hearing, Podeweltz testified that she received harassing telephone calls from Rieger after they stopped dating. Indeed, she testified that she had fifty calls on one day alone. Podeweltz testified that most of the calls were received in the early morning around 6:00 a.m., but that some were received in the evening. She also testified that Rieger placed daily calls to her at her place of work. Podeweltz also testified that she asked Rieger to stop calling her and that she repeatedly told him that the relationship was over. *Page 4 {¶ 13} Podeweltz testified that she frequently went to a McDonald's restaurant located on Wilmington Pike at approximately 6:45 a.m. on her way to work. She testified that she has to eat in the mornings because she is hypoglycemic. She testified that Rieger would follow her to the restaurant "at least two or three times a week." She stated that he would continue to follow her vehicle until she turned down the road to her place of work. Podeweltz testified that Rieger would honk his horn and cross lanes of traffic in order to make sure that she saw him. She testified that she would "take a break" and not go to McDonald's for a while in order to make him think she was no longer going there. However, when she would begin going there again, he would again start following her. She testified that when she left work she would also encounter him in his vehicle waiting for her to pass by, and that he would pull up to her car to make sure that she, again, noticed him.
 {¶ 14} Podeweltz testified that around June of 2005 she went to a local festival with her niece. She testified that around 10:30 that evening she entered the "beer tent" where she encountered Rieger. She testified that he "got right into [her] face, his nose almost touching [her] face" and said "hi" to her. She testified that she knocked his arm causing his beer to spill.
 {¶ 15} According to Podeweltz, this behavior continued for approximately six weeks before she filed her petition, and continued for a period of approximately seven months. She testified that she eventually filed a criminal complaint with the Kettering Police Department. Podeweltz testified that Rieger's behavior was "scary" and that she was afraid of him. She testified that Rieger carries a gun and that she does not know whether he will "snap." She also testified that Rieger was "not sane," that his actions were "over the line, obsessive," and that she wanted him to leave her alone. Podeweltz further *Page 5 
testified that Rieger's behavior had continued for seven months "without relief," and that she found this "terrorizing" and terrifying. She finally testified that she had installed an alarm system in her home because of Rieger's actions.
 {¶ 16} Podeweltz's son, Jason Kosater, testified that he lived with his mother during her relationship with Rieger, and that he did not move out until a few months after that relationship ended. Kosater testified that after the relationship he answered calls to the home from Rieger two to three times a week. During the calls, Rieger would ask about Podeweltz. According to Kosater, he told Rieger that he needed to leave Podeweltz alone, but Rieger told Kosater that he would not stop his behavior. Kosater also testified that he observed Rieger drive by the residence "at least once a week." He testified that his mother was "pretty shaken up about it."
 {¶ 17} Podeweltz's mother, Nancy Moore, also testified at the hearing. According to Moore, following the breakup between Podeweltz and Rieger, Rieger called her to tell her about the split and to tell her that he was upset. Moore also testified that after that initial call, Rieger called her two more times, around 2:00 a.m., to ask her to intervene with Podeweltz because he could not get over her. Finally, Moore testified that Rieger stated that Podeweltz "would be the one who's sorry" if she proceeded with the "charges."
 {¶ 18} Jason Wooster, a co-worker of Podeweltz's testified that he had introduced Podeweltz to Rieger. He testified that after the couple broke up, Rieger began to call him at home at 7:00 a.m. and ask about Podeweltz. Wooster stated that Rieger would call him "once or twice a week," and that the calls continued for a couple of months.
 {¶ 19} Rieger also testified during the hearing. He admitted to telephoning Podeweltz to attempt to reconcile, but he denied the frequency of calls to which she *Page 6 
testified. Indeed, he only admitted to calling her on two occasions. He also denied placing calls to Podeweltz's mother, but later in his testimony stated that he "might have talked to her." Rieger admitted that he did speak to Podeweltz's son on one occasion, but denied making any other calls to him. He also admitted that he talked to Podeweltz's co-worker, Jason Wooster.
 {¶ 20} Rieger further admitted going to the McDonald's on Wilmington despite the fact that it was located to the south of his home and place of work and was not on his route to work. However, he testified that his aunt and sister lived "in that direction" and that he went to that McDonald's because it was in a safe area and has a "very nice atmosphere." Rieger also testified that he drove by Podeweltz's home a "few times" on his way to his aunt's house.
 {¶ 21} With regard to his petition for a CSPO, Rieger testified that during the time they dated, Podeweltz kicked him "in the back of his right shin." He further testified that in June of 2005, he encountered Podeweltz at a local festival. He stated that he was in the "beer tent" when Podeweltz entered the tent. He testified that he said "[o]h, Angelia, what are you doing-," when she proceeded to bend his arm and caused his beer to spill over him. Rieger testified that, because of that encounter, he developed tennis elbow, which was only slowly healing. He testified that her actions caused him to be in fear for his safety.
 {¶ 22} Following the hearing, the magistrate granted Podeweltz's petition and dismissed Rieger's petition. Rieger filed objections, which were overruled by the trial court.
 {¶ 23} From the order of the trial court granting a CSPO to Podeweltz, and denying his motion for a CSPO against Podeweltz, Rieger appeals. He asserts fifteen separate *Page 7 
assignments of error. Most of the claimed errors were not raised in his objections to the magistrate's decision. Absent plain error, this court need not address the claims of error that were not raised at the trial court level. Gevedon v. Gevedon, 167 Ohio St. 3d 450, 2006-Ohio-3195, ¶ 20. "Civil plain error is error which, though not objected to, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the judicial process itself." Id.
 {¶ 24} Additionally, we note that many of Rieger's assignments of error are capable of being considered together. Indeed, his stated assignments of error are lengthy because they include his arguments in support thereof. Thus, in the interest of efficiency, we have restated and consolidated his arguments as appropriate.
 II {¶ 25} Rieger's First Assignment of Error is as follows:
 {¶ 26} "THE JUDGMENT OF THE TRIAL COURT IS NOT SUPPORTED BY THE EVIDENCE."[1]
 {¶ 27} In this argument, Rieger contends that the record lacks evidence sufficient to support the trial court's decision to grant Podeweltz's petition. He further argues that the trial court's decision to grant Podeweltz's petition and to deny his petition is not supported by the weight of the evidence.
 {¶ 28} R.C. Section 2903.214 governs the filing of a petition for a civil stalking protection order. That statute provides that a petitioner seeking a civil stalking protection *Page 8 
order must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211. R.C.2903.214(C)(1). R.C. 2903.211(A)(1) states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211 further provides as follows:
 {¶ 29} "(D) As used in this section:
 {¶ 30} "(1) `Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents * * *."
 {¶ 31} The culpable mental state of menacing by stalking is "knowingly," which is defined in R.C. 2901.22(B) as follows:
 {¶ 32} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 33} Thus, in order to grant a civil protection order, the petitioner need not prove that the respondent intended to cause actual harm to the other person; instead, the evidence must show that the respondent knowingly engaged in a pattern of conduct that caused the other person to believe that the respondent will cause physical harm or mental distress to the other person.
 {¶ 34} "The decision whether or not to grant a civil protection order is well within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." Bucksbaum v.Mitchell, Richland App. No. 2003-CA-0070, 2004-Ohio-2233, at *Page 9 ¶ 14.. An abuse of discretion occurs when the decision of a court is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. A preponderance of the evidence is all that is required to support a civil protection order. Jenkins v. Jenkins, Franklin App. No. 06AP-652, 2007-Ohio-422, ¶ 17. Further, "the weight to be given to the evidence and the credibility of the witnesses is primarily a matter for the trier of fact." Id. at ¶ 14. "This is because the trier of fact is in the best position to view the witnesses and consider their demeanor and truthfulness." Id. "An `appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings.'" Id.
 {¶ 35} Based upon the evidence in this case, the magistrate concluded that Rieger had engaged in menacing by stalking. First, there is evidence that Rieger engaged in a pattern of conduct consisting of continuously making telephone calls and physically following Podeweltz. Second, there is also evidence that Podeweltz was afraid of Rieger. Although Rieger only made one oblique threat to Podeweltz's mother, as noted by the magistrate, "explicit threats are not necessary to establish the elements of menacing by stalking." State v. Smith (1998),126 Ohio App. 3d 193. Podeweltz testified that she found Rieger "scary, terrorizing and terrifying." Further, given that Podeweltz testified that Rieger carried a gun, that she repeatedly asked him to leave her alone, that he continued with his obsessive behavior, and she ultimately felt that she needed to press criminal charges and install a security system, we conclude that a reasonable trier of fact could infer that she *Page 10 
believed herself to be in danger.
 {¶ 36} Finally, the magistrate made the following findings with regard to the culpable mental state for menacing by stalking:
 {¶ 37} "In this case, given the volume of calls and following after numerous requests to stop, [Rieger] had a certain awareness. [Rieger] was rebuffed by [Podeweltz]. He attempted to enlist the aide of [Podeweltz's] family members. They rebuffed him. He persisted nonetheless. The conduct * * * was not occasional, it was constant. It was daily, not weekly. None of it resulted in any change in the position of [Podeweltz]. Given these circumstances, [Rieger] was aware that he was simply harassing [Podeweltz]. One would conclude that this harassment would result in [Podeweltz] becoming afraid. [Rieger] clearly had an awareness of all the circumstances."
 {¶ 38} We agree with the magistrate's conclusion that Rieger had knowledge that his conduct was of such a nature as to cause Podeweltz to believe that he would cause her physical harm. Based upon the foregoing, we find that the magistrate's decision is supported by a preponderance of competent, credible evidence.
 {¶ 39} We next address Rieger's claim that the magistrate and trial court erred by dismissing his petition for a CSPO. In support, he claims that the magistrate erred in determining that he had neither a subjective, nor an objective, fear of Podeweltz.
 {¶ 40} The magistrate found that Rieger failed to demonstrate the elements required for menacing by stalking specifically because Rieger's testimony that he was afraid of physical harm from Podeweltz was not credible. We cannot say that this was an unreasonable conclusion. Therefore, we conclude that the magistrate and trial court did not err by dismissing Rieger's petition. *Page 11 {¶ 41} Accordingly, Rieger's First Assignment of Error is overruled.
 III {¶ 42} Rieger's Second Assignment of Error states as follows:
 {¶ 43} "THE TRIAL COURT ERRED IN DETERMINING EVIDENTIARY ISSUES."[2]
 {¶ 44} In this assignment of error, Rieger first contends that the trial court erred by relying on hearsay testimony from one of Podeweltz's witnesses. Specifically, Rieger complains that during the hearing, Jason Wooster impermissibly testified regarding "alleged phone calls [Rieger placed] to Podeweltz at work and reasons Angelia Podeweltz's [sic] was upset at work * * *." Of relevance to this issue is the following colloquy between Wooster and Podeweltz's attorney:
 {¶ 45} "Q: So, and you work in relative, close approximately with Ms. Podeweltz?
 {¶ 46} "A: Yes.
 {¶ 47} "Q: Would she receive phone calls during the day from Mr. Rieger?
 {¶ 48} "A: I wasn't close enough to hear those phone calls first hand. I know from talking to my supervisor about-
 {¶ 49} "COUNSEL FOR RIEGER: Objects [sic], hearsay.
 {¶ 50} "THE COURT: Sustained.
 {¶ 51} "Q: When you, were there occasions when [Podeweltz] would be upset at work?
 {¶ 52} "A: Yes.
 {¶ 53} "Q: Okay. And, I mean, was she visibly upset? *Page 12 
 {¶ 54} "A: Yes.
 {¶ 55} "Q: Did you have any, did you have discussions with [Podeweltz] after seeing her upset?
 {¶ 56} "A: On three or four occasions, yes.
 {¶ 57} "Q: And did she tell, yeah, did she tell you why she was upset?
 {¶ 58} "COUNSEL FOR RIEGER: Objection.
 {¶ 59} "COUNSEL FOR PODEWELTZ: Party admission.
 {¶ 60} "THE COURT: What are you asking for, not your own — sustained."
 {¶ 61} Rieger contends that the above-cited testimony alleges facts which "are Hearsay and should be stricken from the decision making process for this case." It appears that Rieger believes that the trial court impermissibly considered the above-quoted testimony in reaching its decision. We disagree.
 {¶ 62} As a reviewing court, we presume that the court, as the trier of fact, did not consider any inadmissible testimony. In re Sims (1983),13 Ohio App.3d 37, 41. The record shows that counsel for Rieger interjected objections regarding Wooster's testimony and that the magistrate sustained those objections. Thus, the record shows that the magistrate precluded the complained of testimony. Additionally, there is no indication in either the magistrate's decision or the judgment of the trial court to indicate that this testimony was considered. Therefore, we find this claim lacks merit.
 {¶ 63} Rieger's next claim of error is convoluted and not entirely clear. However, he appears to contend that any evidence pertaining to McDonald's should have been *Page 13 
excluded because Podeweltz did not set forth the specific McDonald's in her petition. He argues that he "could not know which McDonald's (location) Podeweltz is talking about and thus Podeweltz [sic] allegations concerning McDonald's adds confusion to this case and impeded Mr. Rieger's ability to forge an effective defense."
 {¶ 64} We are not sure how the failure to identify the specific McDonald's restaurant to which Podeweltz was referring in her petition prejudiced Rieger. It is clear from the transcript of the hearing that he knew which location was in issue. If he had any questions about the location, there was ample time prior to the hearing for discovery requests. Moreover, we note that this issue was not raised upon objections to the magistrate's report and we find no plain error in this regard.
 {¶ 65} Rieger also contends that the magistrate erred by permitting testimony regarding the fact that as a result of the criminal charges filed by Podweltz, he pleaded guilty to the offense of disorderly conduct. He contends that because the testimony was admitted, the entire record regarding this offense should have been introduced at the hearing and that this court should permit it to be introduced as part of the record on appeal. Finally, he argues that this evidence constitutes an impermissible attempt to impeach by evidence of a conviction of a crime in contravention of Evid.R. 609.
 {¶ 66} Again, Rieger failed to raise any objection in this regard either during the hearing or in objections to the magistrate's decision. Further, Rieger has failed to demonstrate any claim of plain error in this regard. There is no indication that either the magistrate or the trial court considered this evidence. Therefore, we overrule this claim of error.
 {¶ 67} Rieger's Second Assignment of Error is overruled. *Page 14 
 IV {¶ 68} Rieger asserts the following as his Third Assignment of Error: {¶ 69} "THE DECISION OF THE MAGISTRATE AND TRIAL COURT SHOULD BE REVERSED DUE TO PROCEDURAL ERRORS."
 {¶ 70} We have categorized Rieger's final claims, labeled as "c, I and j" in his appellate brief, as involving issues of procedure.
 {¶ 71} Rieger first contends that the magistrate erred by granting ex parte and permanent relief to Podeweltz because her petition did not allege that she felt threatened by his actions. We find no merit to this argument; indeed, it borders on frivolous. A simple review of the petition shows that it is a form document provided to potential victims. The form merely requires a petitioner to "describe the nature and extent of two or more threats or other pattern of conduct which causes you to believe the Respondent will cause physical harm or causes or has caused mental distress to you or a family or household member." There is no requirement that the petitioner fill in a statement that she/he feels threatened by the respondent. The form, by its very language, contains the appropriate allegations. The fact that Podeweltz set forth a description of the actions which caused her to believe Rieger would cause her physical harm serves to put him on notice of her allegations.
 {¶ 72} We next address Rieger's claim that the trial court improperly concluded that he failed to comply with the provisions of Civ.R. 53(E). Relevant to this claim is the fact that Rieger raised an objection to the magistrate's decision granting ex parte relief to Podeweltz. In reviewing that objection, the trial court noted that Rieger had failed to comply with the provisions of Civ.R. 53, because he failed to submit either a transcript of *Page 15 
the ex parte relief hearing or an affidavit of the facts. Rieger contends that this was error on the part of the trial court.
 {¶ 73} We agree with the trial court's assessment of the facts in this regard. Civ.R. 53(D)(3)(b)(iii) requires a person filing objections to a magistrate's factual findings to submit a transcript or affidavit in support of any claim of error. Rieger did not provide the trial court with any transcript or affidavit of facts to support his claim regarding the magistrate's decision to grant ex parte relief. Thus, the trial court was precluded from reviewing this objection and Rieger waived his right to an appeal of that issue. Civ.R. 53(D)(b)(iv). In any event, the fact that the magistrate and trial court found that Podeweltz was credible in her testimony, and that she was entitled to permanent relief, renders moot any objection in this regard. Further, the trial court noted that during the hearing on permanent relief, Podeweltz testified that she was afraid of Rieger at the time she requested the ex parte relief. Given that we have no transcript or affidavit of the proceedings on the ex parte relief hearing, we can find no error with regard to the decision to grant ex parte relief. Rieger next claims that the magistrate should be disqualified due to bias. In support, he contends that the magistrate conducted ex parte communications with Rieger during the instant proceedings. Indeed, he sets forth a statement of his recollection of conversations between himself and the magistrate that occurred on an ex parte basis during the course of the proceedings.
 {¶ 74} We note that the information set forth in Rieger's appellate brief is not properly before us because it was not made a part of the record either at the trial court level or pursuant to App.R. 9. The only evidence we have before us on this issue is that set forth in the transcript wherein, prior to beginning the hearing, the magistrate informed *Page 16 
all parties that Rieger had initiated telephone calls to him despite being represented by counsel. The purpose of the calls was to discuss whether signing the consent agreement would affect Rieger's right to own firearms. The magistrate stated that he did not discuss any substantive issues or factual matters with Rieger, but simply informed him that he did not "think" Rieger would have to turn in his hunting firearms and that he thought Rieger might have "difficulty" purchasing new firearms if found guilty of the offense.
 {¶ 75} We begin by noting Civ.R. 53(D)(6) provides that a litigant may seek the disqualification of a magistrate by filing a motion with the court. Rieger did not file a motion to disqualify the magistrate. Furthermore, he did not request disqualification of the magistrate at the hearing, and indeed, he specifically stated on the record that despite the contact, he wished to proceed with the hearing and that he would "accept" the judgment of the magistrate. We further note that Rieger did not raise this issue on objection to the magistrate's decision. Thus, we find that he has waived this issue at all levels. We also find no merit to this claim given that Rieger initiated the contact and that he has failed to demonstrate bias.
 {¶ 76} Finally, Rieger contends that he is entitled to a new trial. In support, he again raises the claims that the magistrate was biased and that the magistrate's decision is not supported by the evidence.
 {¶ 77} Again, Rieger has failed to preserve this issue for review. He did not request a new trial pursuant to Civ.R. 59. Further, we have already declined to find error with regard to his claims that the magistrate was biased or that the judgment was not supported by the evidence. Thus, we find that Rieger is not entitled to a new trial.
 {¶ 78} Rieger's Third Assignment of Error is overruled. *Page 17 
 V {¶ 79} All of Rieger's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, FAIN and DONOVAN, JJ., concur.
[1] This assignment of error encompasses Rieger's claims labeled as "a, d, e, g, h, k, m, n and o"as set forth in his statement of assignments of error.
[2] This assignment of error encompasses Rieger's claims labeled as "b, e, f and l' in his statement of assignments of error. *Page 1