[Cite as *Barium & Chems., Inc. v. Miller*, 2016-Ohio-5656.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BARIUM & CHEMICALS, INC. | ) | CASE NO. 14 JE 0030 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ROSS A. MILLER | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
                               Pleas of Jefferson County, Ohio
                               Case No. 14 CV 195

JUDGMENT:                      Affirmed.

APPEARANCES:

For Plaintiff-Appellant:       Atty. Robert Naylor
                               Naylor Law Offices, Ltd.
                               P.O. Box 4697
                               Steubenville, Ohio  43952

For Defendant-Appellee:        Atty. Steven A. Stickles
                               Ohio Valley Towers
                               500 Market Street, Suite #10
                               Steubenville, Ohio  43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                               Dated:  September 1, 2016

WAITE, J.

{¶1} Appellant, Barium & Chemicals, Inc. (hereinafter, "Barium") appeals the July 25, 2014 decision of the Jefferson County Court of Common Pleas, denying a civil protection order sought against Appellee, Ross A. Miller (hereinafter, "Miller").

{¶2} On May 14, 2014, Barium filed its petition seeking a civil stalking protection order pursuant to R.C. 2903.214 based on two incidents: (1) Miller's April 7, 2014 visit to Barium while absent from employment due to a worker's compensation injury to turn in his keys and collect his personal effects; and, (2) Miller's allegedly threatening statement regarding coworkers made during his emergency room visit on May 8, 2014. On appeal, Barium asserts that the trial court erred in finding that there was no pattern of conduct as required by the statute and so, in failing to grant the protection order.

{¶3} On review, the record reveals that the trial court did not abuse its discretion and its decision was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

{¶4} The record contains the following facts: Miller was a nearly fifteen-year employee of Barium, eventually working up to the position of lead maintenance employee. During the relevant time period, Miller was on unpaid medical leave from work due to a work-related injury.

{¶5} On April 7, 2014, Miller went to Barium to retrieve personal items and to return his keys, garage opener and other Barium property. According to the *ex parte* petition, while on the jobsite, Miller:

[B]ecame agitated, belligerent and used obscenities directed at [Barium] and [Barium's] employees. When retrieving personal items from his locker, [Miller], in violation of [Barium's] employment policies, produced a hunting knife which he opend [sic] and closed in an intimidating manner in front of [Barium's] employees monitoring [Miller's] retrieval of personal items. Before leaving, [Miller] stated [Barium] had not seen the last of [Miller].

(5/14/14 Petition.)

{¶6} On May 8, 2014, Miller admitted himself into the emergency room at Trinity West Hospital. During an interview with the treating nurse, Miller indicated that he had suicidal thoughts and also that he had homicidal thoughts regarding his coworkers. He did not name any specific individuals and expressed misgivings about sharing his homicidal thoughts during that interview. Miller was later transferred to Trinity Behavioral Health Center for in-patient mental health treatment. A case manager there read the emergency room interview notes and, pursuant to the hospital's policy, notified the Jefferson County Sheriff's Department that Miller made what appeared to be third-party threats in the emergency room, although he never personally heard Miller make any such threats. The case manager also contacted Barium directly to inform them of Miller's alleged threats.

{¶7} After conducting an *ex parte* hearing as authorized by statute, the trial court issued an order protecting Barium and its employees. The matter was scheduled for a hearing, conducted on June 23, 2014 by agreement of the parties.

**{¶8}** The trial court conducted a full hearing. Both parties were present and represented by counsel. Testimony was taken from a number of witnesses, including Barium's president, several Barium employees, and selected staff from Trinity Hospital where Miller sought treatment. Miller did not testify.

**{¶9}** Kimberly Bowers (hereinafter "Bowers"), an emergency room nurse at Trinity West Hospital, testified that she interviewed Miller when he presented himself in emergency on May 8, 2014. She testified regarding Miller's statements to her about his suicidal and homicidal thoughts. Miller indicated that he was having thoughts of both suicide and homicide. She testified that he mentioned he was thinking of harming coworkers, but did not mention any specific person. Later in the conversation he acknowledged that "[w]ell, maybe I shouldn't say that" regarding his coworkers. (Tr., pp. 16-17.)

**{¶10}** Bernard Ferrisse, case manager/therapist at Trinity Behavioral Health Center where Miller was receiving in-patient treatment, testified that, although he did not hear Miller make any threats regarding his coworkers, in reading the intake report of the emergency room, he believed the statements could pose a credible threat and was compelled, under the hospital's duty to warn policy, to contact Jefferson County Sheriff's Department to report the threat.

**{¶11}** There was also testimony from Barium employees who discussed Miller's demeanor during his visit to Barium on April 7, 2014. They testified about his agitated demeanor during the visit. Deborah Venci (hereinafter "Venci"), President of

Barium, also testified that Miller had advanced knowledge of all utility and security in the building in his position as the lead maintenance employee.

**{¶12}** The trial court took the matter under advisement and ordered post-hearing briefs. On July 25, 2014 the trial court issued a final judgment entry overruling Barium's petition for a civil stalking protection order, finding the evidence presented regarding Miller's conduct did not rise to the level of a pattern of conduct, as the second incident failed to demonstrate that Miller possessed the requisite mental culpability of "knowingly" as defined under R.C. 2901.22(B). Barium timely appeals and presents two assignments of error for review.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The Trial Court Erred As A Matter of Law When It Held Statements Made By A Patient To Medical Personnel For The Purpose Of Diagnoses And Treatment And Where The Defendant Has No Reason To Believe Or Be Aware His Statements Will "Probably" Get Back to Plaintiff Are Not A Threat Under R.C. 2903.211(A).

**{¶13}** In its first assignment of error, Barium contends the trial court erred as a matter of law in its interpretation of R.C. 2903.211. Specifically, Barium contends that the trial court held as a matter of law, a threatening statement made by a patient to medical personnel when seeking medical treatment cannot amount to a "threat" for purposes of R.C. 2903.211(A).

**{¶14}** In order to grant a protection order, the trial court must find the petitioner has demonstrated through a preponderance of the evidence that the

respondent engaged in menacing by stalking as set forth within R.C. 2903.211. *Caban v. Ransome,* 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 7. R.C. 2903.211(A)(1) provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶15} " 'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). One incident, alone, is insufficient to establish a pattern of conduct under the statute. *State v. Scruggs*, 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2d Dist.2000).

{¶16} The requisite culpable mental state of menacing by stalking is "knowingly". R.C. 2903.211. Knowingly is defined in R.C. 2901.22(B) as:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶17}** Thus, in order to show that a defendant has violated R.C. 2903.211 and that a civil protection order should issue, it must be shown that the defendant engaged in conduct that he or she knew would probably cause the petitioner to believe that petitioner was in danger of physical harm or mental distress. *Ramsey v. Pellicioni*, 7th Dist. Nos. 14 MA 134, 14 MA 135, 2016-Ohio-558, ¶ 18.

**{¶18}** In its July 25, 2014, judgment entry the trial court held:

In Summary [sic], the Court finds that where a statement is made by a patient to medical personnel for the purpose of diagnoses and treatment and where the Defendant has no reason to believe or be aware that his statements will "probably" get back to Plaintiff then the statement is not a threat under R.C. 2903.211(A) and Defendant cannot be said to have "knowingly" caused another to believe anything at all.

(7/25/14 J.E., p. 3.)

**{¶19}** Barium claims that based on this language in the judgment entry, the trial court made an erroneous blanket statutory interpretation. However, it is clear from the trial court's opinion that the judge weighed all of the evidence before it in concluding that a civil protection order should not issue. It is equally clear that, despite the inartful drafting of the above paragraph, the trial court completely understood and followed the correct standard:

The issue becomes whether or not Defendant's statement at the hospital "**knowingly"** caused Plaintiff to believe that Defendant would cause them harm.

* * *

Even though the comments were not made for the purpose of making a threat, they could still have knowingly caused Plaintiff to believe that Defendant would cause them physical harm if Defendant was aware that the circumstances were such that his comments would get back to Plaintiff, regardless of his purpose.

(7/25/14 J.E., p. 2.)

**{¶20}** Even though the trial court may have discussed its findings in a manner which appears to address statutory interpretation, which involves a matter of law, the record and the judgment entry read as a whole clearly shows that the trial court weighed all of the evidence before it in entering judgment consistent with the relevant law. Barium's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The Trial Court Abused Its Discretion, Committed Reversible Error And Ruled Against The Manifest Weight Of The Evidence In Its Determination There Was No Evidence That Defendant Was Aware Of Any Probability His Statements Would Get Back To Plaintiff.

**{¶21}** In its second assignment of error, Barium contends the trial court's denial of the civil protection order is against the manifest weight of the evidence.

**{¶22}** A trial court's decision to grant or deny a civil protection order will not be disturbed where the decision is supported by the manifest weight of the evidence. *Morton v. Pyles,* 7th Dist. No. 11 MA 124, 2012-Ohio-5343, ¶ 8. In a manifest weight

analysis, a reviewing court weighs the evidence, including all reasonable inferences, considers the credibility of all witnesses, and makes a determination that, whether in resolving conflicts in the evidence, the finder of fact clearly lost its way or created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. However, when conducting a manifest weight analysis the reviewing court must "be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶23}** Thus, a judgment supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶24}** A number of witnesses testified at the hearing, including four of Miller's coworkers; Venci, President of Barium; Bowers, the treating nurse; and Ferrisse, the case manager. Two of Appellant's coworkers, Linda Yanok, Vice President of Sales; and Roberta Ballato, the company bookkeeper, both testified as to Miller's threatening and agitated demeanor and conduct when he was at Barium in April of 2014. Ballato testified, "[Miller] was irritated, like I said, agitated, a little confrontational." (Tr., p. 29.)

**{¶25}** During her testimony Yanok stated, "I've known [Miller] for 15 years and the Ross Miller that was in our office that day I have never seen before. He was very antagonistic. He was loud. He swore a lot and it was just -- he was just very, very frightening to me and I just wasn't really sure what was going to happen." (Tr., p. 68.)

**{¶26}** Neither Barium nor Miller dispute the character of Miller's conduct during the April 7, 2014 visit to Barium. This conduct could form the basis for one incident of threatening behavior. However, as noted, in order to establish a pattern of conduct under the statute another such incident, closely related in time, needs to be shown by a preponderance of evidence.

**{¶27}** Regarding the alleged second incident, Bowers testified that during her interview of Miller at the emergency room she conducted a suicide risk assessment. She also asked him if he was having homicidal thoughts, to which he answered in the affirmative. Bowers testified that when she asked at whom those thoughts were directed, "[h]e wouldn't say anybody --anybody specific. Asked who, he -- I said '[a]re you talking about coworkers?' Yes." (Tr., p. 17.) Bowers later testified, "[h]is reason for coming into the ER is because he was having thoughts about hurting his coworkers." (Tr., p. 17.) Bowers further testified that when asked about harming coworkers, "[h]e answered yes to it. He wouldn't be specific. He didn't say how. Then he would back-step and said [sic] '[w]ell maybe I shouldn't say that.'" (Tr., p. 17.)

**{¶28}** Ferrisse, the case manager at the behavioral health center where Miller was transferred after his emergency room visit, testified that he reviewed the emergency room notes. Under the hospital's duty to warn policy, he was required to report any credible threats to law enforcement. In his reading of the intake notes, Miller's statements could be seen as posing a threat. He testified that he had not heard Miller make any threats against Barium or any of his coworkers.

**{¶29}** Barium contends this evidence confirms that a second incident occurred. Barium insists that the fact that he appeared to "back-step" his statements to the nurse affirmatively demonstrates that Miller knew these statements would get back to Barium. Thus, Miller was aware that his comments could lead to criminal or civil liability. The record does not appear to support this contention, however. There is no testimonial evidence to support the assertion that Miller had knowledge that Barium would be informed of his statements. The record demonstrates that Miller checked himself into the hospital seeking care for his mental wellbeing and after initial intake agreed to be transferred to the behavioral center for extended treatment. His reluctance to completely admit to his thoughts could just as easily be taken simply as a recognition or acknowledgement of his illness. Barium seeks to have this Court second-guess the trial court's interpretation of witness testimony and make inferences that are otherwise unsupported in the record.

**{¶30}** After listening to all of the witnesses and reviewing exhibits submitted by Barium and admitted into evidence, including the police complaint which resulted from Ferrisse's contact with the Jefferson County Sheriff's Department, the trial court acknowledged that:

> The statements in the hospital were made to hospital personnel not to Plaintiff. Although the statements got back to Plaintiff it does not appear that they were calculated or even expected to get back. Instead, the statements were made to help medical personnel diagnose and treat his homicidal and suicidal thoughts.

(7/25/14 J.E., p. 2.)

> The Court finds no evidence that Defendant was aware of any probability that his statements would get back to Plaintiff. Because Defendant had no reason to be aware that his statements would likely find their way back to Plaintiffs, causing them to fear harm, it cannot be said that he "knowingly" "caused another to believe that the offender would cause physical harm."

(7/25/14 J.E., p. 2.)

**{¶31}** Because the finder of fact Is accorded great deference in determining the appropriate inferences to be made from testimony, and that this matter is entirely based on inference, we see no basis to overturn the trial court's decision in the instant matter. The credibility of the witnesses and weight to be given to those witnesses' testimony are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is free to believe or disbelieve any witnesses, as well as all or part of each witness's testimony. *Kranek v. Richards,* 7th Dist. No. 11 JE 2, 2011-Ohio-6374, ¶ 26.

**{¶32}** A review of the record reveals the trial court, as trier of fact, did not lose its way in denying Barium's petition for a civil protection order. As regards the hospital statement which formed the basis for Barium's alleged second incident necessary to prove a pattern of conduct, there was no evidence presented of other comments made to anyone else during Miller's hospital treatment, nor was there any indication that Miller, in making the initial statement to the emergency room nurse,

met the mental culpability standard for "knowingly." The trial court did not find the testimony about the second incident rose to the required level to show a pattern of conduct required by the statute, nor was there a preponderance of evidence demonstrating that the statements in the hospital emergency room were tantamount to menacing by stalking as defined by the statute. Accordingly, the trial court's decision to deny the civil protection order was not against the manifest weight of the evidence, and the second assignment of error is also overruled.

{¶33} Based upon the foregoing, Barium's two assignments of error are without merit and the judgment of the Jefferson County Common Pleas Court is affirmed.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.