[Cite as *Collins v. Vulic*, 2021-Ohio-3343.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mark Collins, | : | |
| Petitioner-Appellee, | : | |
| | | No. 20AP-528 |
| v. | : | (C.P.C. No. 20CV-6328) |
| Sekula Vulic, | : | (REGULAR CALENDAR) |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on September 23, 2021

**On brief:** *The Tyack Law Firm Co., L.P.A.,* and *Holly Cline*, for appellant. **Argued**: *Holly Cline*.[1]

APPEAL from the Franklin County Court of Common Pleas.

MENTEL, J.

{¶ 1} Respondent-appellant, Sekula Vulic, appeals from the decision and entry of the Franklin County Court of Common Pleas granting the petition of petitioner-appellee, Mark Collins, for a civil stalking protection order ("CSPO").

{¶ 2} For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Appellant and appellee are neighbors in Hilliard, Ohio. Appellant has lived at the Hilliard residence with his wife, Mary Vulic, for over 30 years. Appellee has lived at the adjacent property with his wife, Natosha Collins, and minor son, J.C., for approximately 5 years.

{¶ 4} On September 24, 2020, appellee filed a petition for a CSPO in the Franklin County Court of Common Pleas against appellant. After the magistrate conducted an ex

---

[1] Petitioner-appellee, Mark Collins, failed to submit a brief or appear for oral argument.

parte hearing as authorized by statute, it concluded that appellee failed to demonstrate that appellant presented an immediate and present danger pursuant to R.C. 2903.214(D)(1). A final evidentiary hearing was scheduled for October 29, 2020. Appellant was notified of the ex parte petition and the final hearing date by letter dated September 28, 2020. The following evidence was adduced at the hearing.

{¶ 5}    According to appellee, the parties have had a problematic relationship since appellee and his family moved to the property. The conflict has centered around a dispute over the property line as well as water drainage purportedly emanating from appellee's property. Appellee alleges that in September 2020, appellant placed a letter in his mailbox after appellee had refused to claim a previous letter sent by certified mail. Appellee acknowledged that he never opened either of the letters at issue. Appellee also claimed that appellant had repeatedly trespassed onto his property. According to appellee, on September 23, 2020, his son, J.C., notified him that appellant was "sticking stake signs on [appellee's] property." (Tr. at 4.) Appellee stated that he knew where the property line was despite no formal survey of the area. Appellee provided a series of photographs of the property and testified that appellant placed a sign by the drainpipe that read: "The letter you will not accept and open asks you to remove this drainpipe that extends 4' onto our property." (Respondent's Ex. 4.)

{¶ 6}    Mary Vulic testified that she, not appellant, sent appellee a certified letter on August 4, 2020. Mrs. Vulic testified that the certified letter "basically stated that we were unhappy with the fact that Mr. Collins had rerouted drainage from his house and sump pump onto our land * * * and we wanted him to stop rather than to do something." (Tr. at 10.) The letter also notified appellee that the Vulics intended to install a fence along the shared property line, and they would be doing some measuring near the area. Mrs. Vulic stated that the certified letter was returned marked "return to sender" and "unclaimed" on September 13, 2020. (Tr. at 10; Respondent's Ex. 1.) Mrs. Vulic provided the sealed unopened letter as an exhibit, which was post marked August 4, 2020. (Respondent's Ex. 1.) A second letter, effectively identical to the first,[2] was sent via regular U.S. mail on September 18, 2020. (Respondent's Ex. 2.) Mrs. Vulic testified the second letter was

---

[2] Mrs. Vulic testified that a brief addendum referencing the certified letter was added to the second letter. (Tr. at 10.)

returned in their mailbox, unopened, and "somewhat crumpled." (Tr. at 11.) According to Mrs. Vulic, after the sign was placed near the drainpipe, it was pulled from the ground and thrown onto the Vulic's property. (Tr. at 11-12.) Appellee also placed "private property" signs along the property line. Mrs. Vulic went on to describe other disputes between the parties noting that appellee had previously made threatening calls to their house. (Tr. at 14.)

{¶ 7} At the conclusion of Mrs. Vulic's testimony, the trial court stated it "did not find sufficient information at this time to grant [appellee's] protective order." (Tr. at 27-28.) Appellee then stated that he was "afraid for [his] life," and he would use "deadly force and [would] be in another courtroom" if appellant entered his property. (Tr. at 28.) Appellee then requested to call his son, J.C., to testify claiming that he was under the impression that the trial court would call his son on its own accord. The trial court allowed J.C. to testify. According to J.C., he had witnessed the Vulics on the left side of the appellee's home toward the back where the stone and the orchard are located. J.C.'s testimony did not address the letters or other types of communication between the parties.

{¶ 8} Appellant provided a brief statement in rebuttal. According to appellant, the trees in the orchard were planted "5, 6 feet away from my property line" over 30 years ago. (Tr. at 35.) At the conclusion of the testimony, the trial court, stated that it "encourage[d] [the parties] to go to court and get [the property line] resolved in [civil] court as opposed to trying to resolve it this way." (Tr. at 38.) The trial court continued stating it is "certain you two need to be apart and don't need to be talking and contacting each other. * * * And [the trial court] is trying to think of the least restrictive way to make sure you don't have contact with each other." (Tr. at 38.) The trial court concluded that while it did not "necessarily like the idea of doing it," it would grant appellee's CSPO petition so that the parties would be "required to stay apart" and have "no personal contact between each other." (Tr. at 38-39.) The trial court also stated that appellee was "to have no contact" with appellant or his wife. (Tr. at 41.)

{¶ 9} On November 3, 2020, the trial court issued the order of protection against appellant for a period of one year. The individuals protected by the order included appellee, his wife, and 17-year-old son, J.C. The trial court identified the types of conduct that were the basis for granting the CSPO as "[e]lectronic methods of transferring communications

* * * with threatening, intimidating and/or derogatory content" and "[w]ritten letters or notes containing threatening, intimidating and/or derogatory content."   (Nov. 3, 2020 Order.)   The trial court also held that appellant must stay 100 feet away from any of the protected persons and shall not initiate or have any contact with the protected persons named in this order.   The order did not include any restrictions upon appellee as the trial court had orally pronounced at the hearing.

{¶ 10}  Appellant filed a timely appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 11}  Appellant assigns the following as trial court error:

> The trial court abused its discretion when it granted Mr. Collins's CSPO petition and imposed the Order of Protection because the CSPO was based on insufficient evidence and was against the manifest weight of the evidence.

## III.  LEGAL ANALYSIS

### A. Appellant's Assignment of Error

{¶ 12}  In his sole assignment of error, appellant argues the trial court abused its discretion in granting the CSPO petition.   Specifically, appellant asserts that appellee presented insufficient evidence at the hearing and the order was against the manifest weight of the evidence.

{¶ 13}  R.C. 2903.214 sets forth the requirements for filing a CSPO petition.   " '[R.C. 2903.214] provides that a petitioner seeking a civil stalking protection order must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211.' "  *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 13, quoting *Podeweltz v. Rieger*, 2d Dist. No. 21725, 2007-Ohio-1513, ¶ 28. R.C. 2903.211(A)(1) states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."   One incident alone is not sufficient to establish a pattern of conduct under R.C. 2903.211.  *Barium & Chems., Inc. v. Miller*, 7th Dist. No. 14JE0030, 2016-Ohio-5656, ¶ 15, citing *State v. Scruggs*, 136 Ohio App.3d 631, 634 (2d Dist.2000).

{¶ 14} A trial court must find support for granting the petition based on a preponderance of the evidence. *C.H. v. M.B.*, 10th Dist. No. 19AP-230, 2019-Ohio-3913, ¶ 5. Whether to grant a CSPO is within the sound discretion of the trial court. *Id.* at ¶ 7, citing *Lias* at ¶ 11, citing *Jenkins v. Jenkins*, 10th Dist. No. 06AP-652, 2007-Ohio-422, ¶ 17; *Peterson v. Butikofer*, 10th Dist. No. 18AP-364, 2019-Ohio-2456, ¶ 38. An abuse of discretion is a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court." *Lias* at ¶ 11, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶ 15} Preliminarily, we note that the trial court provided no formal opinion explaining its reasoning in this case. As such, we must conclude that the identified conduct in the order are the only grounds for granting the CSPO. It is well-established law that the trial court speaks only through its journal entries. *Infinite Sec. Solutions, L.L.C. v. Karam Properties II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, ¶ 29. "Neither the parties nor a reviewing court should have to review the trial court record to determine the court's intentions." *Id.* Here, the trial court cited two types of conduct as the basis for the CSPO, (1) "[e]lectronic methods of transferring communications * * * with threatening, intimidating, and/or derogatory content" and (2) "[w]ritten letters or notes containing threatening, intimidating, and/or derogatory content." (Nov. 3, 2020 Order at 3.)

{¶ 16} Regarding the identified conduct in the order, we conclude that the trial court abused its discretion in granting the CSPO as appellee failed to demonstrate that appellant engaged in a pattern of conduct as contemplated under the menacing by stalking statue. R.C. 2903.211(D)(1) defines "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." When determining what constitutes a pattern of conduct " 'courts must take every action into consideration even if * * * some of the person's actions may not, in isolation, seem particularly threatening.' " *J.W. v. D.W.,* 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 47, quoting *Olson v. Olson*, 6th Dist. No. WD-15-002, 2016-Ohio-149, ¶ 14.

{¶ 17} First, there is no evidence in the record to support the trial court's conclusion that appellant used electronic methods of transferring communication with threatening,

intimidating, and/or derogatory content to appellee, Mrs. Collins, or J.C. In fact, appellee presented no evidence that appellant even attempted to use electronic methods to communicate with any of the protected parties. Accordingly, we conclude there is no evidentiary basis for the trial court to find that appellant engaged in a pattern of conduct, prohibited under the menacing by stalking statute, through electronic methods of communication.

{¶ 18} We also conclude that the trial court abused its discretion in finding that appellant sent written letters or notes that contained threatening, intimidating, and or/derogatory content to the protected parties. The facts at the hearing indicate that appellee received one certified letter dated August 4, 2020, which appellee conceded was never opened. (Tr. at 4.) The letter was returned to the Vulics marked "return to sender" and "unclaimed" on September 13, 2020. (Tr. at 10; Respondent's Ex. 1.) The second letter was sent by regular U.S. mail on September 18, 2020. Mrs. Vulic testified that the letter was later returned, unopened, to their mailbox, "somewhat crumbled." (Tr. at 11.) Appellant provided the trial court the two unopened letters as exhibits. Trial court stated it would "take [Mrs. Vulic's] word that you say they're the same thing." (Tr. at 17.) The question becomes whether sending a certified letter and a second letter by U.S. mail, that were never opened, constitutes the type of prohibited conduct under the statute. The answer is a resounding no. Without opening the letters, appellee had no way to determine whether the letters contained "threatening, intimidating, and/or derogatory content." Curiously, the trial court seemed to reach the same conclusion during the hearing stating, "at this point [in] these proceedings, * * * the idea that [the Vulics] sent [Mr. Collins] certified mail, which they're entitled to do. They did not personally--you said that they came on your property. I'm not--I don't find sufficient information at this time to grant your protective order." (Tr. at 27.) While J.C. testified after the trial court's statements, J.C.'s testimony concerned the alleged trespass, not any written or electronic communication.

{¶ 19} Furthermore, the trial court also abused its discretion concluding that appellant "knowingly" caused, or attempted to cause, any of the protected parties' mental distress. Pursuant to R.C. 2901.22(B), "[a] person acts knowingly * * * when the person is aware that the person's conduct will probably cause a certain result or will probably be of a

certain nature."  Under the facts of this case, it is unreasonable to conclude that appellant knowingly attempted to harass or intimidate appellee by sending two letters concerning their ongoing property dispute.  While the Vulics could not have anticipated appellee would not read the letters, nothing contained therein could be construed as threatening, intimidating, or derogatory content under the statute.  The letters outline the dispute between the parties and ask appellee to take certain remedial measures within 30 days. While the letters indicate the Vulics would install a fence at the property line, it stated "[the Vulics] would be careful not to cross on to [appellee's] property."  (Respondent's Ex. 3.) The last sentence reflects the tone of the letter reading: "We look forward to resolving these issues with you amicably."  (Respondent's Ex. 3.)  Based on the foregoing, we find the trial court abused its discretion in granting the CSPO.

{¶ 20} While we can appreciate the tension inherent in any conflict between neighbors, we share the trial court's concern for further escalation of this dispute. We encourage the parties to resolve the property line matter peacefully and make all reasonable efforts to stay away from each other going forward. We also acknowledge the trial court's admirable efforts to resolve this dispute between the parties.  We, however, cannot find any reasonable support in the record for granting the CSPO petition.

{¶ 21} Accordingly, appellant's sole assignment of error is sustained.[3]

## IV.  CONCLUSION

{¶ 22} Having sustained appellant's sole assignment of error, we reverse and vacate the judgment of the Franklin County Court of Common Pleas.

*Judgment reversed.*

SADLER and JAMISON, JJ., concur.

_____

---

[3] In addition to appellant's argument that the trial court's factual findings were based on insufficient evidence, he also argues that the ruling was against the manifest weight of the evidence.  In light of our finding that there was insufficient evidence to grant the CSPO, we decline to consider whether the petition was also against the manifest weight of the evidence as the issue is moot.  App.R. 12(A)(1)(c); *see also P.S. v. High*, 9th Dist. No. 18CA0008-M, 2019-Ohio-437, ¶ 11 (concluding that because there was insufficient evidence to grant the CSPO the remaining assignment of error that the evidence was against the manifest weight of the evidence was moot).