**[Cite as *H.C. v. C.P.*, 2026-Ohio-33.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [H.C.], | : | |
| Petitioner-Appellee, | : | No. 25AP-328 |
| | | (C.P.C. No. 23CV-7837) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [C.P.], | : | |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on January 8, 2026

**On brief:** *Farthing Law Firm LLC*, and *John Farthing*; *O.J. Scheaf & Associates LLC*, and *O. Judson Scheaf, III*; *Ice Miller LLP*, and *Erica L. Arras*, for appellee. **Argued:** *Erica L. Arras.*

**On brief:** *C.P.*, pro se. **Argued:** *C.P.*

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Respondent-appellant, C.P., appeals from a judgment of the Franklin County Court of Common Pleas granting a civil stalking protection order ("CSPO") in favor of petitioner-appellee, H.C. For the following reasons, we reverse.

## I. Facts and Procedural History

{¶ 2} In November 2023, H.C. filed a petition for a CSPO against C.P. pursuant to R.C. 2903.214. On December 4, 2023, the trial court granted the CSPO in favor of H.C. after holding an evidentiary hearing. At that hearing, H.C. appeared pro se and presented his own sworn testimony in support of his petition. C.P. did not appear. One week later, C.P. moved for relief from the CSPO based on not being notified of the hearing date. A trial court magistrate set C.P.'s motion for a hearing. At that hearing held on March 27, 2024,

attended by both H.C. and C.P., the CSPO was vacated, and the matter proceeded to a final evidentiary hearing on H.C.'s petition. The hearing centered on whether C.P. sent a flyer, containing highly personal information concerning H.C., to dozens of H.C.'s family, friends, associates, and others. Based on the evidence presented at the hearing, the magistrate granted the CSPO for a term to expire on December 4, 2026. C.P. filed objections to the magistrate's decision. On March 13, 2025, the trial court overruled C.P.'s objections and adopted the magistrate's decision as its own.

{¶ 3} C.P. timely appeals.

## II. Assignments of Error

{¶ 4} C.P. assigns the following five assignments of error for our review:

[I.] The Trial Court erred in adopting the Magistrate's Decision when it permitted testimony that should have been excluded as inadmissible speculation and conjecture.

[II.] The Trial Court erred in adopting the Magistrate's Decision granting a civil stalking protection order when the decision was against the legal or factual sufficiency of relevant, competent and credible evidence to sustain such a decision.

[III.] The Trial Court erred in finding that there was not fraud by an adverse party, under Civ.R. 60(B)(3).

[IV.] The Trial Court erred in finding that there was not fraud upon the court, under Civ.R. 60(B)(5).

[V.] The Trial Court erred in not finding that there was additional fraud upon the court, under Civ.R. 60(B)(5).

## III. Discussion

{¶ 5} Because it resolves this appeal, we first address C.P.'s second assignment of error. In this assignment of error, C.P. contends the trial court erred in granting H.C.'s petition for a CSPO because there lacked competent, credible evidence to support the issuance of the CSPO. This assignment of error has merit.

{¶ 6} This court reviews the granting of a CSPO under the abuse of discretion standard. *C.H. v. M.B.*, 2019-Ohio-3913, ¶ 7 (10th Dist.). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When ruling on a CSPO, a trial court acts within its discretion if there is "some competent, credible evidence to support" its decision. *J.B. v. O.S.Y.*, 2022-Ohio-3226, ¶ 55 (8th Dist.). *See Montgomery v. Kleman*, 2019-Ohio-4526, ¶ 8 (3d Dist.)

(noting that a trial court does not abuse its discretion in granting a civil protection order if there is some competent, credible evidence to support the decision); *Guthrie v. Long*, 2005-Ohio-1541, ¶ 9 (10th Dist.) ("If there is some competent, credible evidence to support the trial court's [granting of a civil protection order], there is no abuse of discretion."). Thus, a trial court lacks discretion to grant a CSPO if no competent, credible evidence supports such an order.

{¶ 7}  C.P.'s second assignment of error presents the issue of whether the trial court's granting of the CSPO was supported by some competent, credible evidence. R.C. 2903.214 provides that a petitioner seeking a CSPO must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211. R.C. 2903.211(A)(1) states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person." A petitioner must establish this violation by a preponderance of the evidence. R.C. 2903.214(C).

{¶ 8}  "When determining what constitutes a pattern of conduct courts must take every action into consideration even if . . . some of the person's actions may not, in isolation, seem particularly threatening." (Internal quotation marks deleted and citation omitted.) *Collins v. Vulic*, 2021 Ohio App. LEXIS 3261, *8-9 (10th Dist. Sept. 23, 2021). "One incident alone is not sufficient to establish a pattern of conduct under R.C. 2903.211." *Id.* at *7, citing *Barium & Chems., Inc. v. Miller*, 2016-Ohio-5656, ¶ 15 (7th Dist.), citing *State v. Scruggs*, 136 Ohio App.3d 631, 634 (2d Dist. 2000). For the purpose of the offense of menacing by stalking, "[m]ental distress" is defined as: "Any mental illness or condition that involves some temporary substantial incapacity; [or] [a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a) and (b). And pursuant to R.C. 2901.22(B), "[a] person acts knowingly . . . when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 9}  In granting the CSPO in favor of H.C., the trial court determined that the evidence at the full evidentiary hearing on H.C.'s petition for a CSPO demonstrated that C.P. engaged in a pattern of conduct knowing she was causing H.C. to incur mental distress. Namely, the court found that over 50 of H.C.'s relatives, friends, neighbors, professionals and colleagues, received a flyer, either via email or regular mail, that divulged highly personal information about H.C., such as his alleged sexual preferences and other scandalous information that only C.P. would have known.  The court also found that C.P. had threatened to disclose this information, and that the flyer contained a photograph of H.C., which was only possessed by C.P., and a link to litigation between the parties in a Florida court.  The trial court concluded that C.P. sent the flyers to the recipients via email and regular mail, and that this demonstrated a pattern of conduct violating R.C. 2903.211. Thus, the basic factual premise of the court's conclusion that C.P. violated R.C. 2903.211 was that certain contents of the flyers sent to recipients, disclosing scandalous information about H.C., were either only known or possessed by her.  As such, the trial court concluded that she was the one who sent them to dozens of C.P.'s family, friends, associates, and others.

{¶ 10} C.P. challenges the trial court's consideration of the contents of the disseminated flyer to conclude that she was the one who sent them.  At the evidentiary hearing before the magistrate, H.C. was asked whether he had a copy of the flyer.  H.C. stated that he "submitted a copy of the flyer and I also have a picture of it." (Tr. at 38.)  The magistrate acknowledged that H.C. submitted some form of the flyer at the previous hearing (which led to the vacated CSPO), and then she asked H.C. to "pull it up on [his] phone so [C.P.] can see it." (Tr. at 39.)  Despite H.C. presenting an image of the flyer on his phone, and testifying about the flyer's contents, neither an original nor a duplicate of the flyer was submitted or admitted into evidence.  Even so, the contents of the flyer formed the evidentiary basis for the trial court's conclusion that C.P. had engaged in menacing by stalking.

{¶ 11} We find the trial court erred in considering the contents of the flyer because neither an original nor duplicate of the flyer itself was admitted into evidence, and no exception applied permitting other evidence—such as witness testimony—to demonstrate the contents of the flyer.

{¶ 12} "In rendering judgment after a bench trial, a trial court considers the evidence adduced from the witness stand, the exhibits admitted during trial, and stipulations." *Kidane v. Gezahegn*, 2015-Ohio-2662, ¶ 20 (10th Dist.). Thus, when reaching a decision following trial, "the trial court may only consider the evidence . . . admitted at trial" and "cannot consider evidence in the record but not admitted at trial." (Internal quotation marks deleted and citation omitted.) *Taylor v. Lucas*, 2025-Ohio-2840, ¶ 42-43 (10th Dist.). And "[a] reviewing court may not consider an exhibit unless the record demonstrates that the exhibit was formally admitted into evidence." *Allen v. Allen*, 2005-Ohio-5993, ¶ 24 (10th Dist.).

{¶ 13} Pursuant to Ohio's Best Evidence Rule, as set forth in Evid.R. 1002, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Evid.R. 1003 permits the admission of a duplicate into evidence, as follows: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." And pursuant to Evid.R. 1004, an "original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if" the original has been lost or destroyed, is unobtainable through the judicial process, is in the possession of an opponent, or pertains to a collateral matter.

{¶ 14} Because neither an original nor a duplicate of the flyer at issue was admitted into evidence, to prove the contents of the flyer through his own testimony, H.C. needed to demonstrate the applicability of one of the exceptions set forth in Evid.R. 1004. But H.C. made no attempt to show the applicability of one of these exceptions. Instead, the flyer was simply shown to the magistrate and C.P. as an image on H.C.'s phone (with no corresponding request for the admission of the image in any form), and H.C. testified as to its contents. Thus, as H.C. expressly acknowledged at the hearing, he was in fact in possession of at least a duplicate of the flyer. Additionally, the contents of the flyer were clearly central to the matter as they were used to connect C.P. to the flyer's creation and dissemination.

{¶ 15} Therefore, insofar as H.C. testified regarding the contents of the flyer, that testimony was improperly admitted into evidence and considered. And in the absence of

that testimony, no other competent, credible evidence reasonably supported a conclusion that C.P. engaged in a pattern of conduct with the knowledge that she was causing H.C. to incur mental distress. Consequently, we conclude the trial court abused its discretion in granting H.C.'s request for a CSPO against C.P.

{¶ 16} For these reasons, we sustain C.P.'s second assignment of error. This disposition renders as moot C.P.'s first, third, fourth, and fifth assignments of error.

## IV. Disposition

{¶ 17} Having sustained C.P.'s second assignment of error, and finding as moot her first, third, fourth, and fifth assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand with instructions to vacate the CSPO.

*Judgment reversed*;
*cause remanded with instructions.*

MENTEL and JAMISON, JJ., concur.

––––––––––––––––––